IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 05-cv-01112-MSK-PAC

PHILLIP ESPINOZA,

        Petitioner,

v.

AL ESTEP, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

        Respondents.

_____

**OPINION AND ORDER ADOPTING RECOMMENDATION AND DENYING
PETITION FOR WRIT OF *HABEAS CORPUS***

_____

**THIS MATTER** comes before the Court pursuant to the Petitioner's Objections **(# 51)** to

the June 15, 2006 Report and Recommendation **(# 39)** of United States Magistrate Judge Patricia

A. Coan that the Petitioner's Amended Petition be denied; the Petitioner's Motion for

Appointment of Counsel **(# 52)**; and the Petitioner's Motion to Stay **(# 54)** resolution of this

matter pending attempts by the Petitioner to exhaust certain claims in state court, the

Respondent's response **(# 55)**, and the Petitioner's reply **(# 56)**.[1]

_____

[1]There are two other pending motions that are now moot.  The Petitioner's Motion for
Extension of Time to File Objections **(# 48)** requested additional time to file Objections, but the
Petitioner subsequently filed his Objections on a timely basis.  The Petitioner also filed a  Motion
to Stay **(# 50)** ruling on the Petition until resolution of an applicable case by the Colorado
Supreme Court, but, as discussed more fully herein, that case has been resolved, rendering the
motion to stay moot.

## **FACTS**[2]

In Summer 1992, the U.S. Drug Enforcement Agency ("DEA") began investigating heroin distribution activities by an individual named Eugene Velarde.  In November 1992, the DEA retained the services of Norma Jean Lopez to act as a confidential informant.  As recited in the Petitioner's brief appealing his conviction to the Colorado Court of Appeals, Lopez had an extensive history of ongoing drug use, criminal activity, domestic relations troubles, and a lack of veracity in some of her dealings with the Government.

On December 9, 1992, the DEA prepared Lopez to engage in a controlled buy of heroin from Velarde, through the Petitioner, an associate of Velarde's.  The DEA agents patted down Lopez to ensure that she was not hiding drugs on her person, but the agents did not subject her to a body cavity search or require her to remove her boots to demonstrate that no drugs were concealed there.[3]  The agents fitted Lopez with a radio transmitter and a tape recorder, and provided her with money with which to make the purchase.

Lopez was dropped off near the Petitioner's apartment.  Lopez knocked on the door of the Petitioner's apartment, and was greeted by Kathleen Bugarin, the Petitioner's girlfriend and an occupant of the apartment.  Upon entering the apartment, Lopez was no longer visible to the

---

[2]The Court notes that the record does not contain a trial transcript.  The Court's understanding of the facts is derived from the representations made by the parties in their appellate briefs and subsequent post-conviction applications, and in the decisions of the Colorado Court of Appeals.

[3]The Petitioner's theory of defense at trial appeared to be that Lopez, eager to reap additional benefits with the Government, fabricated the drug transaction by concealing her own drugs on her person, engaging in an innocuous meeting with the Petitioner, and then producing the drugs she had hidden to the Government, falsely stating that the Petitioner had given them to her.

DEA agents conducting surveillance, and the contents of the transmission and recording provide the only direct evidence of the events occurring inside the apartment. Lopez asked for "Lipe," the name by which the Petitioner was known, to which Bugarin responded that he was there, and instructed someone – presumably the Petitioner[4] – that "It's [Lopez]," and informing Lopez that "he just woke up." Lopez told the man to "Get up, lazy. . . I need to cop [get some drugs]." The man asked how much money Lopez has and what quantity she wants. The three individuals spoke briefly, and the man then made a telephone call, requesting a "3-0," which apparently represents the quantity of heroin that Lopez had asked for. After completing the call, the man told Lopez that it would take 45 minutes for his supplier – subsequently identified as "Gene" – to deliver the drugs. In the interim, the man asked Lopez to go out to a nearby liquor store and purchase some items for himself and Bugarin. Lopez did so, and returned and chatted with both the man and Bugarin. In the course of that conversation, Lopez counted out the $ 300 she had to purchase the drugs.

Eventually, a van owned by Velarde pulled into the apartment's parking lot. According to the recording, the man snatched Lopez's money out of her hand and exited the apartment, where he was seen by DEA agents descending the stairs, and walking to the parking lot. Lopez followed the man, demanding to see "Gene." The actual drug transaction was not seen by the DEA agents, but moments later, agents observed the man returning to the apartment, meeting Lopez while she was still on the stairs. The two returned to the apartment together, and Lopez insisted in the recording that she had wanted to see "Gene." The man replied that Gene was in a hurry, and

---

[4]A significant point of contention by the Petitioner is that the male voice on the recordings never identifies himself as "Lipe," nor does anybody else directly refer to him as such. It is the Petitioner's position that the identity of the male voice on the tape is never established.

would call her later.  Lopez then left the apartment, turning over heroin she had received from the man to the DEA agents.  A few days after these events, Lopez was murdered, leaving the recordings she made as the primary evidence at trial.

On January 15, 1993, the Petitioner and co-Defendant Velarde were each charged with one count of distribution of heroin in violation and one count of conspiracy.  Prior to trial, the Petitioner moved to suppress the tape recordings made by Lopez and certain statements related to those recordings, but that motion was denied by the trial court, primarily under the residual hearsay exception found in Colo. R. Evid. 804(b)(5).  From January 10-14, 1994, the charges against the Petitioner were tried to a jury, and the jury convicted the Petitioner of both counts.  On February 3, 1994, the Petitioner was sentenced to life imprisonment, with the possibility of parole.

The Petitioner appealed his conviction to the Colorado Court of Appeals, raising four issues: (i) that the trial court improperly admitted the tape recording in violation of the hearsay rule; (ii) that the admission of the tape recording and related statements about its contents deprived the Petitioner of his rights under the Confrontation Clause of the U.S. and Colorado constitutions; (iii) that the trial court erred in admitting hearsay evidence that Lopez had bought heroin in the past from the Petitioner; and (iv) that the trial court erred in denying the Petitioner's motion for a judgment of acquittal due to insufficient evidence.  By Order dated February 15, 1996, the Colorado Court of Appeals affirmed the Petitioner's conviction. In particular, the Court of Appeals found that: (i) the Petitioner did not object at trial to the introduction of the tape recordings on hearsay grounds, prompting only plain error review; (ii) the lack of express identification of the male voice on the recordings was overcome by evidence that both women

referred to the man as "Lipe," and by other evidence from Bugarin that would support the conclusion that the voice on the tape was that of the Petitioner; (iii) that the Petitioner was not deprived of his Confrontation Clause rights because most of Lopez's statements on the tapes were not offered for the truth of the matters they asserted, but merely to put the Petitioner's own responses to those statements into context; (iv) that, as to those assertions by the informant that were offered for their truth, the Government had shown "particularized guarantees of trustworthiness," ameliorating any right to confront; (v) that the trial court properly limited the admission of testimony that Lopez had bought drugs from the Petitioner in the past; and (vi) that there was sufficient circumstantial evidence of guilt to support the jury's findings.[5]

The Petitioner sought certiorari to the Colorado Supreme Court, raising four issues: (i) whether the admission of the tape recording under the residual hearsay exception deprived the Petitioner of his Confrontation Clause rights; (ii) whether there was adequate foundation laid for the admission of the tape recording (*i.e.* the identification of the male voice as being the Petitioner); (iii) whether the DEA agent's testimony that Lopez claimed to have bought heroin from the Petitioner in the past was properly limited by the trial court to eliminate its hearsay character; and (iv) whether the evidence was sufficient to support the conviction. On September 3, 1996, the Colorado Supreme Court denied certiorari.

---

[5]In addition to testimony by DEA agents and the playing of the tape recording of the events, the evidence at trial included testimony by Bugarin. Although she denied that any drug transaction took place on December 9, 1992, she corroborated or gave context to many of the collateral events heard in the tape recordings – *i.e.* that Lopez came to the Petitioner's apartment on that date, that the Petitioner was present at the time, that the Petitioner made a phone call while Lopez was present and asked Lopez to go buy liquor, that both Lopez and the Petitioner left and returned to the apartment, etc. In addition, Bugarin's denial of a drug transaction taking place on that date was impeached by statements she had previously made to various police officers, confirming that the transaction had occurred.

In or about May 1997, the Petitioner then filed a timely *pro se* motion to vacate his conviction pursuant to Colo. R. Crim. P. 35(c), alleging "ineffective assistance of counsel, illegal search and seizure, newly discovered evidence and discovery violation."[6]  The court appointed counsel for the Petitioner to pursue this motion, and counsel supplemented the Petitioner's *pro se* motion, focusing only on the issue of whether the Petitioner received effective assistance by trial counsel.  On August 31, 2001, the trial court conducted a hearing on the motion, limited to the ineffective assistance of counsel claim, and subsequently denied the motion.  The Petitioner, through counsel, appealed that denial to the Colorado Court of Appeals, raising two issues: (i) that the trial court erred in not conducting a hearing as to issues in the *pro se* motion other than ineffective assistance; and (ii) that the Petitioner received ineffective assistance at trial, through his counsel's failure to investigate certain facts about Lopez's background and failure to call certain witnesses on the Petitioner's behalf.  Specifically, the Petitioner contended that his counsel should have called Velarde to deny having sold heroin to the Petitioner on December 9, 1992, and should have called two Denver police detectives who would have given testimony that would have damaged Lopez's credibility.  By Order dated November 29, 2002, the Colorado Court of Appeals affirmed the denial of the Rule 35(c) motion, finding: (i) that the trial court correctly concluded  that the Petitioner's counsel's decision not to call Velarde as a witness at trial was not prejudicial, in that Velarde's trial testimony would have been subject to vigorous cross-examination; (ii) that the failure to call witnesses to further attack Lopez's credibility was not prejudicial, as that evidence would have been cumulative of evidence admitted at trial; and (iii)

---

[6]The Petitioner's *pro se* motion does not appear in the record.  This Court's description of that motion is taken from the characterization of that motion in the Petitioner's brief to the Colorado Court of Appeals concerning the denial of the motion.

that the trial court did not err in not hearing the remaining of the Petitioner's *pro se* motion because it was clear that the relief requested was not warranted.

The Petitioner sought certiorari to the Colorado Supreme Court on the same issues raised before the Court of Appeals with regard to the Rule 35(c) motion, but on April 28, 2003, the Colorado Supreme Court denied that request.

In July 2003, the Petitioner filed a second *pro se* Rule 35(c) motion. That motion alleged 10 claims for relief, including assertions relating to the Petitioner's arrest and initial detention; issues relating to the consent of the Petitioner and Lopez to electronic monitoring; discovery violations by the Government; prosecutorial and judicial misconduct amounting to "a conspiracy on the part of all the agencies involved"; whether a special prosecutor should have been appointed and a change of venue granted; and whether the Petitioner received effective assistance of counsel at both trial and post-conviction stages.[7]  The trial court denied the motion without a hearing and without appointing counsel to assist the Petitioner.  The Petitioner appealed the denial to the Colorado Court of Appeals, and on December 4, 2004, the Court of Appeals denied the Petitioner's appeal, finding: (i) the majority of his allegations were either time-barred or successive; and (ii) the Petitioner's claim of ineffective post-conviction counsel were insufficiently conclusory.  The Petitioner sought certiorari of these (and other) claims to the Colorado Supreme Court, but on April 18, 2005, the Supreme Court denied that request.

On June 6, 2005, the Petitioner timely commenced this action pursuant to 28 U.S.C. § 2254.  His Amended Petition **(# 5)** raises twelve grounds: (i) his initial arrest (for the murder of

---

[7]Again, the *pro se* motion does not appear in the record  The Court's description of the motion is derived from the issues raised by the Petitioner's *pro se* appeal of the denial of that motion.

Lopez) was effectuated without probable cause; (ii) his continued detention for the controlled

substance offenses he was subsequently charged with was without probable cause; (iii) the

wireless surveillance engaged in by the DEA was without a warrant, in violation of the 4th

Amendment; (iv) that the Government withheld discoverable evidence from the Petitioner, thereby

depriving him of Due Process under the 14th Amendment; (v) the admission of the tape recordings

under the residual hearsay exception violated the 6th and 14th Amendments; (vi) a challenge to the

sufficiency of the evidence supporting the Petitioner's conviction under the Due Process clause of

the 14th Amendment; (vii) a claim of prosecutorial misconduct in violation of the Due Process

clause of the 14th Amendment; (viii) a similar claim of judicial misconduct; (ix) a claim under the

Due Process clause that there was "conspiracy to convict" the Petitioner; (x) that the Petitioner

received ineffective assistance of post-conviction counsel in that "none argued the lack of

probable cause for the arrest for murder.  None argued the lack of probable cause to charge [the

Petitioner] for distribution of a controlled substance . . . None argued the prosecutor misconduct

nor judicial misconduct which is clearly present"; (xi) a claim under the 6th and 14th Amendments

that an initial Rule 35(c) proceeding, rather than a direct appeal, is the first time an individual can

raise an ineffective assistance of counsel challenge; and (xii) that the admission of the DEA

agent's testimony that Lopez claimed to have bought heroin from the Petitioner in the past

deprived the Petitioner of Due Process under the 14th Amendment.

     This Court referred the merits of the Petition to United States Magistrate Judge Patricia

A. Coan.  On June 15, 2006, Judge Coan issued a Report and Recommendation (**# 37**) that the

Petition be dismissed.  Specifically, Judge Coan found as follows: (i) the Petitioner's first through

fourth, seventh through ninth, and eleventh claims, along with that portion of his tenth claim that

asserted ineffective assistance of trial counsel were procedurally defaulted, in that the Colorado Court of Appeals found them to be time-barred or successive; (ii) that the Colorado Court of Appeals' conclusion that there were sufficient guarantees of trustworthiness in the tape recordings to overcome any Confrontation Clause concerns was not an unreasonable application of controlling law; (iii) that the Court of Appeals reasonably found there to be sufficient evidence to support the Petitioner's conviction; and (iv) that the Petitioner cannot obtain *habeas* relief based on accusation of ineffective assistance of post-conviction counsel, citing 28 U.S.C. § 2254(i).[8]

On November 13, 2006, the Petitioner filed timely Objections **(# 51)** to Judge Coan's Recommendation. Specifically, the Petitioner: (i) acknowledged that Claims 1-4 and 7 are "precluded from further review in this Court"; (ii) concedes that Claims 8 and 9 are "redundant in nature and should be dismissed with prejudice"; (iii) argues that Claim 11 presents "an issue of first impression" presently pending before the Colorado Supreme Court in *Silva v. People*, and disposition of this claim should be stayed pending the outcome of that case; (iv) asserts that, as to Claim 5, as a matter of law, hearsay testimony does not possess circumstantial guarantees of trustworthiness if the statements advance the declarant's penal interests, *citing Stevens v. Ortiz*, 465 F.3d 1229 (10th Cir. 2006); (v) contends that as to Claim 6, assuming that the tape recordings are excluded on the grounds set forth in Claim 5, there was insufficient evidence to sustain the Petitioner's conviction; (vi) argues that as to Claim 10, that Colorado law provides that the Petitioner was entitled to effective assistance of counsel in the preparation of his first Rule 35(c) motion, and that the ineffective assistance of his trial and/or post-conviction counsel prevented

---

[8]Although she noted the parties' references to Claim 12, Judge Coan could not locate that page in the Amended Petition, and declined to consider a claim that was "not included as part of the original filing of the Application with the Court."

him from exhausting his claim that the Government withheld discoverable evidence from him warrants him being excused from the procedural default on that claim.

On May 21, 2007, the Petitioner moved to stay (**# 54**) the resolution of this matter in order to permit the Petitioner to return to state court and attempt to exhaust some of his unexhausted claims.  He contends that *Silva v. People*, 156 P.3d 1164 (Colo. 2007) establishes that he is entitled to effective assistance of counsel in post-conviction proceedings, and that ineffective assistance at that stage can constitute cause for the failure to comply with state time limits on post-conviction claims.  The Petitioner alleges that, as a result, he has the ability to present some of his unexhausted claims to the state courts, and thereby exhaust them for consideration of the Court here.

## ANALYSIS

### A.  Motion for Appointment of Counsel

After filing his Objections, the Petitioner moved (**# 52**) for the appointment of counsel, contending that he "has made a colorable showing of entitlement to habeas relief and hence counsel should be appointed to assist him in developing these claims."  A state prisoner seeking federal *habeas* relief has no particular right to assistance of counsel, and the decision as to whether to appoint counsel is confined to the District Court's discretion. *Swazo v. Wyoming Dept. of Corr.*, 23 F.3d 332, 333 (10th Cir.1994).  In exercising that discretion, this Court  considers a number of  factors including the merits of the Petitioner's claims, the nature of the factual and legal issues presented, and the ability of the Petitioner to present them.  *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).

Here, the Court finds that these factors do not warrant appointment of counsel to represent the Petitioner.  The factual and legal issues presented in this action are not particularly complex, and despite his *pro se* status, the Petitioner has generally done a superlative job in presenting his claims directly and concisely and with the support of relevant case authority.  Indeed, the Court can conceive of little that an attorney could have added to the Petitioner's presentation.  Moreover, for the reasons stated herein, the Court finds that the Amended Petition does not assert any claims of arguable merit.  Accordingly, the Motion for Appointment of Counsel is denied.

### B.  Motion to Stay

Because the Petitioner's motion to stay this action pending his attempts to return to state court and exhaust his claims affects the propriety of the Court's proceeding on the merits of this action, the Court turns to that motion next.

In *Silva*, the Colorado Supreme Court considered the issue of whether a Rule 35(c) petitioner can demonstrate justifiable excuse for filing a second Rule 35(c) motion outside of the three-year deadline[9] set by C.R.S. § 16-5-402(1).  156 P.3d at 1165.  In that case, Silva had been convicted of several crimes and had his conviction affirmed on appeal.  *Id.* at 1166.  With the assistance of appointed counsel, he filed a Rule 35(c) motion that challenged the adequacy of his trial counsel's performance.  *Id.*  The trial court ultimately denied that motion, and Silva appealed.  Upon finally exhausting his appeals of that denial, he filed a second Rule 35(c) motion, raising a variety of new claims, including a claim of ineffective assistance by his post-conviction counsel.

---

[9]The three-year clock begins running at the conclusion of the petitioner's direct appeal.  Here, that date would be on or about September 3, 1996, the date the Colorado Supreme Court denied certiorari on the Petitioner's direct appeal.

*Id.* The trial court denied the second Rule 35(c) motion outright, finding it was filed beyond the three-year limitations period. *Id.* Silva appealed that second denial, relying on the syllogism that: he could not file the second Rule 35(c) motion, challenging the ineffectiveness of his post-conviction counsel's performance on the first Rule 35(c), until the Court of Appeals had denied that first motion; the Court of Appeals' decision did not issue until after the three-year statutory period for filing Rule 35(c) motions had expired; and thus, Silva had been prevented from timely filing the second Rule 35(c) motion by the Court of Appeals' delay. *Id.* at 1166-67. Finding some merit in this argument, the Court of Appeals found that Silva had shown good cause for failing to timely file his challenge to his post-conviction counsel's performance, but that he had no excuse for not timely raising his other claims – claims which did not depend on the resolution of his first Rule 35(c) motion by the Court of Appeals. *Id.* at 1167. However, the Court of Appeals went on to deny Silva's second Rule 35(c) motion as to the sole remaining issue of ineffective assistance of post-conviction counsel, finding that there is no constitutional right to representation by counsel is post-conviction matters. *Id.*

The Colorado Supreme Court disagreed with this last proposition. Finding that Colorado courts had long recognized a "limited statutory right to post-conviction counsel," the Supreme Court explained that that right arose when two predicate facts were established: (i) that the trial court has not deemed the petitioner's *pro se* Rule 35(c) to be "wholly unfounded"; and (ii) that the Colorado Public Defender's office has certified that the motion has some arguable merit. *Id.* at 1168. The remainder of the *Silva* decision addresses the particular analytical standard that applies to claims of ineffective assistance by post-conviction counsel. *Id.* at 1168-70. The Supreme Court concluded by reversing the Court of Appeal's denial of Silva's ineffective

12

assistance of counsel claim, and remanded it for further analysis under the proper analytical

framework.  *Id.* at 1170.

In the circumstances presented here, the Petitioner reads *Silva* far too broadly.  At best,

*Silva* stands for two propositions: (i) that there is a limited right to effective post-conviction

counsel if the two criteria described above are met; and (ii) that a subsequent Rule 35(c) motion

that alleges ineffective assistance by post-conviction counsel may be timely, even if not filed

within the time limits of C.R.S. § 16-5-402(1), if the time limit ran while the Court of Appeals

was considering the post-conviction counsel's handiwork on the first Rule 35(c) motion.  More

importantly, *Silva* does <u>not</u> stand for the main proposition for which the Petitioner here reads it.

It does <u>not</u> automatically deem all claims raised in an untimely second Rule 35(c) motion to be

justiciable simply because one of those claims alleges ineffective assistance of post-conviction

counsel; the Supreme Court's decision does not reverse the Court of Appeals' denial of  Silva's

other untimely Rule 35(c) claims, and the scope of the remand makes it clear that only the

ineffective assistance claim was being sent back for further consideration. At best, *Silva* would

only apply to a portion the final claim in the Petitioner's second Rule 35(c) motion – the

portion that alleges that the Petitioner's post-conviction counsel was ineffective in not ensuring

that the evidentiary hearing on the Petitioner's first Rule 35(c) motion encompassed all of the

claims in the Petitioner's *pro se* motion.  This, in turn, implicates only Claim 10 of the Amended

Petition here, which challenges the effectiveness of the Petitioner's post-conviction counsel.

However, Judge Coan did not reject Claim 10 as being unexhausted; rather, she found that the

claim <u>was</u> exhausted, but was without merit.

Thus, in the circumstances presented here, this Court sees no possibility that *Silva* would permit the Petitioner to return to state court to exhaust any of the claims in the Amended Petition that Judge Coan found were unexhausted. Consequently, there is no reason to stay this action to permit the Petitioner to return to state court. Accordingly, the motion to stay is denied.

## C. Merits

### 1. Standard of review

Where a party files timely objections to a Magistrate Judge's Recommendation, the Court reviews the objected-to portion of the Recommendation *de novo*. Fed. R. Civ. P. 72(b).

Judge Coan's Recommendation ably sets forth the various standards governing review of *habeas* petitions under 28 U.S.C. § 2254, and the Court incorporates that discussion by reference. In sum, pursuant to 28 U.S.C. § 2254(d), *habeas* relief is appropriate only where the state court unreasonably applied clearly established federal law or reached a decision based on an unreasonable determination of the facts. The Petitioner bears the burden of demonstrating by clear and convincing evidence that the trial court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Trice v. Ward*, 196 F.3d 1151, 1169-70 (10th Cir.1999). Judge Coan's

Given the Petitioner's *pro se* status, the Court construes his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).

### 2. Claim 10

The Court turns first to Claim 10 in the Amended Petition, in which the Petitioner alleges that he was denied the effective assistance of post-conviction counsel. The Petitioner's Objections as to this claim present a somewhat convoluted argument. He argues extensively that, because Colorado requires criminal defendants to present ineffective assistance of trial counsel

claims in collateral proceedings under Rule 35(c), instead of through direct appeals from their convictions, this first Rule 35(c) proceeding is akin to an appeal as of right, and thus, the right to assistance of counsel attaches in such a Rule 35(c) proceeding.  He notes that this is the issue pending before the Colorado Supreme Court in *Silva*, and requests a stay or a declaration by the Court adopting the Petitioner's argument.  At this point, the discussion concerning Claim 10 ends, and a new paragraph heading, reading "Cause and Prejudice/Defaulted Ineffective Assistance of Counsel Claims" begins.  In that new heading, the Petitioner explains the basic rules of exhaustion of claims, and the exception to that rule where a petitioner can show cause for failing to exhaust claims and prejudice resulting from those claims being meritorious.  He then explains that the DEA withheld records relating to Lopez from his trial counsel, and that as a result, his Fourth Amendment requests – which this Court interprets to refer to Claims 1-3 in the Amended Petition – could not properly be presented to the state courts.  The Petitioner states that, therefore, he has shown "through governmental interference" why he failed to exhaust these claims at the state level.  He then points out that he attempted to raise these claims as "an ineffective assistance of counsel argument," but that the state courts did not reach the merits of the claims because the Petitioner was "unable to provide evidentiary support due to governmental interference."

Given the unclear arguments by the Petitioner's Objections on this claim and the Magistrate Judge's refusal to consider the issue on the merits (for reasons that may have been called into doubt by *Silva*), the Court will approach this issue *de novo*, returning to the original articulation of Claim 10 in the Amended Petition.  That Claim alleges that, during the evidentiary hearing conducted on the Petitioner's first Rule 35(c) motion, the trial court stated that the Petitioner or his counsel "can raise other issues besides ineffective assistance of counsel that have

15

already been litigated as an issue that we'll reserve for resolution at another date."  It goes on to note that "none of the attorneys appointed to represent" the Petitioner argued the Fourth Amendment claims asserted as Claims 1-3 in the Amended Petition, nor argued the prosecutorial and judicial misconduct claims the Petitioner wishes to allege.  Conceptually and temporally, these allegations break down into two separate contentions: (i) that the Petitioner's trial counsel was ineffective for failing to raise the various Fourth Amendment issues – that the arrest and detention of the Petitioner were without probable cause, and the recording of his conversation with Lopez occurred without a warrant – prior to trial; and (ii) that the Petitioner's post-conviction counsel was ineffective in failing to raise prosecutorial and judicial misconduct claims which could only be cognizable in a post-conviction proceeding.  The Court will analyze each contention in turn.

Under *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Court analyzes claims of ineffective assistance of counsel using a two-part test: (i) Mr. Lee must show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (ii) that he suffered prejudice as a result.   The prejudice prong is established by showing that there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." *Id*. at 694

The Petitioner's contention of ineffective assistance by his trial counsel suffers from several problems.  First, and perhaps foremost, it is unexhausted.  The Petitioner's first Rule 35(c) motion raised ineffective assistance of trial counsel as a ground, and indeed, the Petitioner's *pro se* motion was supplemented by his post-conviction counsel's motion on this issue, and the trial court conducted an evidentiary hearing into the matter.  Nevertheless, neither the Petitioner's briefs to the Colorado Court of Appeals, nor the Court of Appeals' ruling itself suggests that the

Petitioner ever contended that his trial counsel was ineffective for failing to challenge his arrest, detention, or recording. Rather, the record is clear that the Petitioner challenged only his trial counsel's failure to investigate Lopez's background and to call certain additional witnesses. Because trial counsel's failure to assert the Fourth Amendment claims were not presented in the first Rule 35(c) motion as grounds for finding trial counsel ineffective, those claims are unexhausted for review here.

Even assuming the Petitioner could show cause for failing to exhaust this issue, he cannot show prejudice, as none of those claims could have prevented his conviction. Even assuming that the Petitioner was improperly arrested for Lopez's murder, any constitutional violation stemming from that improper arrest was cured when he was not charged with that crime. By contrast, assuming that the Petitioner's counsel could have shown that his detention on controlled substance charges was, at that time, without probable cause, any such argument vanished once the Petitioner was indicted[10] on those charges, and, in any event, was conclusively rejected when the jury convicted him of those charges. *See e.g. Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006); *Malady v. Crunk*, 902 F.2d 10, 11 (8th Cir. 1990). As to the Petitioner's argument that Lopez's recording of their conversation constituted a Fourth Amendment violation, the law is clear that the Petitioner had no expectation of privacy stemming from the unwarranted belief that Lopez would not repeat the contents of their conversation, whether orally or by means of recording or transmission. *Hoffa v. U.S.*, 385 U.S. 293, 302-03 (1966) ("Neither this Court nor any member of it has ever expressed the view that the Fourth Amendment protects a wrongdoer's misplaced

---

[10]The Court assumes that the Petitioner was indicted on the controlled substance charges at some point during the early stages of the action against him.

belief that a person to whom he voluntarily confides his wrongdoing will not reveal it"); *Lee v. U.S.*, 343 U.S. 747, 751-54 (1952) ("Petitioner was talking confidentially and indiscreetly with one he trusted, and he was overheard. This was due to aid from a transmitter and receiver, to be sure, but with the same effect on his privacy as if agent Lee had been eavesdropping outside an open window"). Thus, none of these issues, even if they had been raised by the Petitioner's trial counsel, could have altered the outcome of this case. Thus, the Petitioner cannot show that he was prejudiced by any ineffective assistance by his trial counsel.

The Court finds several similar defects in the Petitioner's assertion that his post-conviction counsel was ineffective as well. In this instance, the most important obstacle may be 28 U.S.C. § 2254(i), which provides that "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief." One might take issue with the apparent incongruity between this rule and the finding of the Colorado Supreme Court in *Silva*. There, the court rejected a contention that, although some criminal defendants might enjoy a right to post-conviction counsel, they should be unable to assert that such counsel was ineffective. 156 P.3d at 1169. The Colorado Supreme Court rejected that argument, finding that failing to provide a remedy for ineffective post-conviction counsel was the equivalent of not providing post-conviction counsel at all. *Id.* One could reasonably argue that 28 U.S.C. § 2254(i)'s ban on federal courts evaluating claims of ineffective post-conviction counsel similarly operates to eviscerate Colorado's right to post-conviction counsel.

Such an argument fails, however. Colorado's right to post-conviction counsel is a <u>statutory</u> right, not one which purportedly derives from the U.S. Constitution. 156 P.3d at 1168 (repeatedly referring to "a limited <u>statutory</u> right to post-conviction counsel") (emphasis added).

Federal *habeas* review is intended only to protect individuals against state deprivations of <u>federal</u> constitutional rights.  28 U.S.C. § 2254(a) (relief available where petitioner is in custody "in violation of the Constitution . . . of the United States").  Because nothing in the U.S. Constitution entitles defendants to post-conviction assistance of counsel, the failure to provide such assistance (or, more accurately, to provide <u>effective</u> post-conviction assistance) is a matter presenting purely state law.  To the extent that the Petitioner believes he was provided insufficient post-conviction representation, the Colorado state courts offer him the only remedy.[11]

Moreover, the Petitioner asserted this same claim of ineffective assistance of post-conviction counsel that he presented in his second Rule 35(c) motion, and the Court of Appeals denied it on the grounds that it contained only conclusory allegations.  *Citing People v. Clouse*, 74 P.3d 336 (Colo. App. 2002).  Under Colorado law, a petition for post-conviction relief that contains only conclusory allegations of ineffective assistance of counsel is subject to summary dismissal.  *Id., citing White v. Denver District Court*, 766 P.2d 632, 635 (Colo. 1988).  Because Colorado state procedural law governing the required content of post-conviction assertions of ineffective assistance constitutes an independent and adequate basis for denying the Petitioner's

---

[11]This Court has some doubt that the Petitioner even falls within the criteria under which *Silva* declares that a right to post-conviction counsel exists.  Although the trial court saw fit to appoint counsel to assist the Petitioner, thereby satisfying the first *Silva* requirement, there is no showing that the Public Defender's office saw any merit in anything other than the Petitioner's ineffective assistance of trial counsel claim.  This Court reads *Silva* to suggest that both criteria must exist before the right to post-conviction counsel – and, correspondingly, the right to <u>complain</u> about post-conviction counsel – arises.

relief, this Court should not disturb the Court of Appeals' judgment by granting *habeas* relief. *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977).[12]

Accordingly, the Court finds that the Petitioner is not entitled to relief on Claim 10 of the Amended Petition.

3. <u>Claim 5</u>

In Claim 5, the Petitioner asserts that his Confrontation Clause rights under the 6th Amendment were violated by the admission of the tape recordings under the residual hearsay exception. The Court of Appeals held that, so long as the recording possessed circumstantial indicia of reliability under *Ohio v. Roberts*, 448 U.S. 56, 65-66 (1980), any Confrontation Clause concerns were overcome. The Petitioner contends in his Objections that this constitutes an error of law, and that under 10th Circuit law, such indicia of reliability can never exist where the declarant – Lopez – made statements advancing her own penal interest.

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." *U.S. Const.*, Am. 6. The clause applies in both federal and state prosecutions. *Crawford v. Washington,* 541 U.S. 36, 42 (2004).[13] It entitles an accused to "see[ ] the witness face to face,

---

[12]In any event, this Court would deny Claim 10 of the Amended Petition on the same grounds as the Colorado Court of Appeals. That is, Claim 10 contains nothing more than conclusory allegations of ineffective assistance of post-conviction counsel, and does not specifically identify the ways in which counsel's performance was inadequate, nor demonstrate that, but for that performance, the result on the Petitioner's first Rule 35(c) motion would have been different. Notably, notwithstanding post-conviction counsel's decision to focus on the ineffectiveness of trial counsel, the Court of Appeals also considered the claims raised *pro se* by the Petitioner in his first Rule 35(c) motion, and found them to be without merit.

[13]*Crawford* tightened the analysis of Confrontation Clause claims, significantly limiting the admissibility of testimonial hearsay. However, in *habeas* proceedings, the Court considers the

and [subject] him to the ordeal of a cross-examination." *Id.* at 57, *quoting Mattox v. U.S.*, 156

U.S. 237, 244 (1895).  At the time of the Petitioner's conviction, constitutional law provided that

the Confrontation Clause was not implicated by the admission of testimonial hearsay if the

statement fell within a "firmly rooted exception" to the hearsay rule, or if the statement was

otherwise attended by "particularized guarantees of trustworthiness."  *Stevens*, 465 F.3d at 1236.

Here, the Colorado Court of Appeals relied only upon the latter, finding that Lopez's recordings

were accompanied by circumstantial guarantees of trustworthiness, and this Court limits its

evaluation to that question.

The Supreme Court has eschewed a "mechanical test" to determine whether a given

statement has sufficient indicia of truthfulness, and courts have "considerable leeway in their

consideration of appropriate factors."  *Idaho v. Wright*, 497 U.S. 805, 822 (1990).  The Supreme

Court's most recent application of the doctrine is in *Lilly v. Virginia*, 527 U.S. 116, 146 (1999)

(plurality).  There, a plurality of the Supreme Court rejected an argument that a

declarant/defendant's admission implicating both himself and his co-defendant was admissible in

the co-defendant's trial despite the declarant's unavailability to be confronted.  Rejecting the

argument that the confession was admissible over a Confrontation Clause challenge because it

was accompanied by circumstantial guarantees of trustworthiness, the Supreme Court found that

the facts relied upon the trial court as demonstrating its trustworthiness were improperly

considered.  Specifically, the Court held that the fact that other evidence at trial corroborates

portions of the declarant's statement, that the statements were made under a *Miranda* advisement,

---

boundaries of constitutional law as they existed at the time the Petitioner's conviction became
final.  *Stevens*, 465 F.3d at 1235 n. 2.  Here, that date is in or about September 1996, long before
*Crawford*.

that the declarant's statement was against his own penal interest, and that the statement was not made in response to a promise of leniency were not circumstances that sufficiently substituted for confrontation of the declarant via cross-examination.  *Id.* at 138-39.  The Court did not affirmatively describe what factors <u>would</u> circumstantially demonstrate truthfulness, but suggested that its prior caselaw dictated that truthfulness should be assessed from the actual words spoken and the setting in which such speech took place.  *Id.* at 139.

With this standard in mind, this Court examines the factors that the Colorado Court of Appeals relied upon in determining that the statements made by Lopez on the recordings possessed sufficient indicia of truthfulness.  The core of the Court of Appeals' analysis reads as follows:

> Here, because of the circumstances in which the informant's statements were made, whether the informant was a liar, a criminal, or had a motive to assure a successful transaction, is not of critical significance.  Most of the informant's statements were made in the presence of third parties and were directed to defendant or to the supplier, individuals who appeared from the content of the conversation to be well known to the informant.
>
> Furthermore, if the informant had made false statements in this setting – <u>e.g.</u>, incorrectly called the addressee "Lipe," counted out less than $300, or falsely accused the addressee of taking the money from her hand – it is extremely unlikely that neither the addressee nor a third party would have contradicted the informant or objected to her statements.  In addition, concurrent actions – the informant exiting the apartment after defendant and the informant's agitated state after failing to gain access to the supplier's van – also corroborate the accuracy of the informant's statements.
>
> To the extent that the informant made statements specifically directed to the DEA agents while she was walking alone to the liquor store and again at the time she was excluded from the van, <u>i.e.</u>, that the supplier would be coming over to the apartment and that the defendant had grabbed the money from her hand, and

> although these particular statements seem to have been made
> specifically for the benefit of the DEA agents, these statements
> were corroborated in the course of the transaction by additional
> statements made to or by defendant.

*Docket* # 17, Ex. D at 9-10.

This Court cannot say that the Court of Appeals unreasonably applied federal law as set forth in cases such as *Lilly*.[14] The quoted text makes clear that the Court of Appeals focused its analysis on the setting in which the recording was made. The court was particularly persuaded that, in most instances, the statements made by Lopez were made in a context in which one of the other participants in the conversation – either the Petitioner of Bugarin – would correct any false statement of present fact made by Lopez. The court also found that the physical actions of the parties were consistent with the words being spoken on the recording. Both of these observations are consistent with the Supreme Court's rule that circumstantial guarantees of trustworthiness must arise from the content or setting of the conversation itself. With regard to those statements that were made outside the presence of any other party, the court found that the truth of such statements was corroborated by other statements made to or by the Petitioner at other times in the conversation. This, too, focuses on the content and setting of the conversation.

Importantly, nothing in the Court of Appeals' analysis focused on any of the factors rejected in *Lilly*. Most importantly, the Court of Appeals did not rely upon other evidence admitted at trial to suggest that Lopez's statements on the recording were truthful assertions of

---

[14]This Court again emphasizes that the trial transcript – and thus, the transcript of the recording of the statements made by Lopez and the Petitioner – is not part of the record here. The Court accepts the findings of fact as to the contents of the recording as set forth by the Court of Appeals, and indeed, the Petitioner has not alleged that the Court of Appeals misstated the facts as shown in the record.

fact.  It did not, for example, deem Lopez's apparent claim to the DEA that she had previously

purchased heroin from the Petitioner to suggest that her statements during the transaction at issue

were truthful.  It did not consider whether Lopez's statements were or were not prompted by a

promise of lenient treatment for her own criminal conduct; indeed, the first quoted paragraph

makes it clear that the court found that issue to be insignificant.

The Petitioner argues in his Objections that *Stevens*, a 10th Circuit case applying *Lilly*,

stands for the proposition that "insufficient indicia of reliability [exist] when hearsay testimony

was entered into trial that was based upon the declarant's penal interests."  This is a

misunderstanding of the holding of both *Stevens* or *Lilly*.  Those cases stand for the proposition

that a statement is not more likely to be truthful simply because the statement is made against the

declarant's own penal interest.  In *Lilly*, the Supreme Court found that statements by a declarant

against his or her own penal interest are not necessarily reliable <u>to the extent they also inculpate</u>

<u>others</u>.  527 U.S. at 139.  Thus, the fact that the declarant in *Lilly* confessed to having

participated in the crime did not make that portion of his confession that also implicated his

brother inherently trustworthy.  Contrary to the Petitioner's reading of *Stevens*, nothing in that

case or anywhere else stands for the proposition that a statement can never be deemed inherently

trustworthy if it implicates the declarant's penal interests.

In any event, the Petitioner's understanding of Lopez's statements on the recording as

bearing on her penal interests is mistaken.  It is undisputed that Lopez, acting as a confidential

informant, was not at risk of criminal prosecution for her own involvement in the purchase of

drugs on December 9, 1992. The Petitioner appears to construe the term "penal interest" in the

sense that Lopez, by virtue of her cooperation with the DEA, obtained preferential treatment in

unrelated criminal cases against her. This is not the sense in which the term "penal interest" is

used in the Federal Rules of Evidence, particularly Fed. R. Evid. 804(b)(3), which allows the

admission of hearsay from an unavailable declarant if the statement is <u>against</u> the declarant's penal

interests.   As the 1972 Advisory Committee's notes explaining the rule state, the rule is premised

upon the notion that "persons do not make statements which are <u>damaging</u> to themselves unless

satisfied for good reason that they are true."  (Emphasis added.)  The notion by the Petitioner that

the term "penal interest" in cases like *Stevens* and *Lilly* refer to a statement made by a declarant

that indirectly <u>benefits</u> a declarant in an unrelated criminal proceeding is unique understanding of

that term that finds no support in either those decisions or in the Federal Rules of Evidence.

Accordingly, this Court finds that the Court of Appeals' application of then-existing

federal law regarding the Confrontation Clause was not unreasonable, and Claim 5 in the

Amended Petition is denied.

4. <u>Claim 6</u>

In Claim 6, the Petitioner argues that there was insufficient evidence to convict him.  It is

clear from his Objections that this claim is asserted conditionally, based on the outcome of his

challenge to the admissibility of the tape recordings in Claim 5.  *See Docket* # 51 at 5, 6

("Assuming arguendo that  . . . the hearsay statements offered by the tape were erroneous[ly

admitted] . . . Mr. Espinoza would respectfully request that there was insufficient evidence to

warrant a conviction"; "if we assume . . . that the tape recording . . . as having to be suppressed . .

. we are left with only vague circumstantial evidence").  The Court does not understand the

Petitioner to allege that, if the recordings were properly admitted, the evidence against him was

still insufficient.  Because the Court has rejected Claim 5, it need not reach the substance of the conditional assertions regarding the sufficiency of the evidence in Claim 6.

     5. <u>Claim 12</u>

Finally, the Court turns to Claim 12 in the Amended Petition.  The Magistrate Judge did not rule on this claim after being unable to locate it in the filed copy of the Amended Petition, and the Petitioner's Objections do not specifically address it.  Nevertheless, in the interests of fairness to the Petitioner, the Court will *sua sponte* consider the merits of that claim.

In this claim, the Petitioner contends that his Due Process rights under the 14th Amendment were violated when the trial court allowed a DEA agent to testify that "the DEA was approached by local DEA from Jefferson County about using Ms. Lopez as an informant because Ms. Lopez had, in the past, bought heroin from Mr. Espinoza."  *Docket* # 3 at 15.  The trial court found that the statement was not hearsay because it was not offered for the truth of the matter asserted; rather, the court received the testimony for the purpose of explaining what prompted the DEA to begin its investigation.  It instructed the jury that they were to consider the statement solely for that purpose.  The Petitioner alleges that "no jury could have heeded a limiting instruction" like that in the circumstances, and that the admission of the statement deprived him of Due Process.

This issue was properly exhausted in the Petitioner's direct appeal.  The Colorado Court of Appeals found that the testimony was not inadmissible hearsay because it was not admitted for its truth, and that the trial court's limiting instruction was adequate.  The Court of Appeals rejected the Petitioner's assertion that "special circumstances" – the fact that there were no

eyewitnesses to the crime[15] and the failure of Lopez to testify at trial – could have affected the jury's ability to comply with the limiting instruction because the truth of the allegation that the Petitioner had previously sold drugs to Lopez was not an issue to be decided by the jury.

When a *habeas* petitioner alleges that the trial court improperly received inadmissible evidence, the role of this Court is to determine whether, in light of the entire record, the improper admission resulted in a fundamentally unfair trial. *Knighton v. Mullin*, 293 F.3d 1165, 1171 (10th Cir. 2002). *Habeas* relief is only available if this Court finds that the probative value of the evidence was so greatly outweighed by the prejudice flowing from its admission that the admission denied the Petitioner due process of law. *Id.* Any evidence that is admitted along with a limiting instruction to the jury must be assessed mindful of the presumption that the jury will follow that instruction. *United States v. Castillo*, 140 F.3d 874, 884 (10th Cir.1998)

This Court finds that the admission of the statement, even if it was improper under Colorado's evidentiary rules (a finding this Court does not necessarily make), was not so overwhelmingly prejudicial that it resulted in a fundamentally unfair trial. The admission of the statement was accompanied by a limiting instruction that the Court presumes the jury followed. The Petitioner argues that the jury "could not" have limited its consideration of the evidence, but does not clearly explain why. The arguments that he apparently raised to the Colorado Court of Appeals essentially attack Lopez's credibility in making such an assertion, but the limiting instruction itself told the jury to consider the evidence only to explain why the DEA chose Lopez as an informant – *i.e.* because she was acquainted with Velarde and the Petitioner. Lopez's

---

[15]It is not clear whether the Court of Appeals' reference to "the crime" refers to the purported prior sale of heroin by the Petitioner to Lopez, or whether it refers to the sale on December 9, 1992.

credibility does not bear upon the purpose for which the jury was instructed to consider the evidence, and thus, this Court sees no reason why it should reject the presumption that the jury followed the trial court's instructions.

Accordingly, the Court finds that the Petitioner is not entitled to relief on Claim 12.

### D.  Certificate of Appealability

In an effort to avoid needless additional motion practice and delay in the resolution of this case, the Court *sua sponte* considers whether a Certificate of Appealability pursuant to 28 U.S.C. § 2253(c)(2).  The Petitioner is not entitled to a Certificate of Appealability unless he can make "a substantial showing of the denial of a constitutional right."*Id.*  He can make that showing by demonstrating that: (1) the issues raised are debatable among jurists, (2) a court could resolve the issues differently, or (3) the questions presented deserve further proceedings.  *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  The Court finds that none of the issues raised in the Petitioner's Objections or addressed herein rise to this level.  Accordingly, the Court denies a Certificate of Appealability.

### CONCLUSION

For the foregoing reasons, the Petitioner's Motion for Extension of Time to File Objections (**# 48**) is **DENIED AS MOOT**.  The Petitioner's first Motion to Stay (**# 50**) is **DENIED AS MOOT**.  The Petitioner's Objections (**# 51**) are **OVERRULED**, and the Court **ADOPTS** the June 15, 2006 Report and Recommendation (**# 39**) of United States Magistrate Judge Patricia A. Coan that the Petitioner's Amended Petition be denied.  The Amended Petition (**# 3**) is **DENIED** in its entirety.  The Petitioner's Motion for Appointment of Counsel (**# 52**) is

**DENIED**.  The Petitioner's second Motion to Stay **(# 54)** is **DENIED**.  The Clerk of the Court is directed to close this case.

Dated this 19th day of September, 2007

BY THE COURT:

Marcia S. Krieger
United States District Judge